**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| SERGII GRYBNIAK,<br><br>        Plaintiff,<br>v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 3:26-cv-1366-SCC |

**<u>DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AND</u>**
**<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

**Law Office of Herrero III & Associates, P.S.C.**
Ismael H. Herrero III USDC-PR Bar No. 203002
P.O. Box 362159
San Juan, Puerto Rico 00936-2159
T: (787) 754-5000
E: herreroilll@herrerolaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
Brian M. Underwood, Jr. *(pro hac vice forthcoming)*
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, GA 30309
T: (404) 572-6649
F: (404) 420 0649
E: brian.underwood@bclplaw.com

*Attorneys for Defendant Google LLC*

1

## I.    INTRODUCTION

As a matter of law, true statements cannot be defamatory.  In 2020, the Securities and Exchange Commission initiated a civil enforcement action against Plaintiff Sergii 'Sergey' Grybniak and his companies (Opporty International, Inc. "Opporty" and Clever Solution "Clever") for conducting an "unregistered and fraudulent securities offering." The action stemmed from the sale of hundreds of thousands of dollars in cryptocurrency to raise capital for Opporty. According to the SEC's complaint, these sales were illegal and were based on materially false representations in violation of numerous securities laws and regulations. The SEC won partial summary judgment against Plaintiff on the unregistered securities claims, and Plaintiff thereafter consented to a judgment on the remainder of the case that enjoined him from selling securities and imposed upon him a six-figure civil fine.

Plaintiff cannot dispute the above. These facts are plainly laid out in various publicly available judicial records. Apparently, for Plaintiff, an output from Gemini—Google's AI assistant (*see* Compl. ¶ 19)—goes too far when it cites to these various judicial records and responds that he "was legally held responsible for making material misrepresentations and engaging in deceptive conduct related to his cryptocurrency venture." (Compl. Ex. A.) But Gemini's statement is **<u>literally</u>** true.

Plaintiff now sues Google for various flavors of defamation complaining that Gemini provides this factually accurate information when prompted for information about him. But his claims fail to allege multiple elements of defamation. Specifically, Plaintiff alleges that in May 27, 2026, a "non-party" submitted prompts asking whether Plaintiff has ever committed fraud, allegedly receiving the "defamatory" output in response. (Compl. ¶ 20.) Plaintiff leaves this "non-

party" conspicuously unidentified.[1] And aside from this unknown "non-party," Plaintiff fails to identify any other publication of these outputs to a third party. Finally, his *only* allegation of harm concerns a denial of a tax exemption from the Puerto Rico Department of Economic Development and Commerce ("DDEC"), yet there are no allegations that the DDEC entity saw the purported Gemini output, let alone relied upon it. (*See* Compl. ¶¶ 28–29.) Indeed, the DDEC's denial itself cited to the same judicial records that Gemini summarized in the allegedly "defamatory" outputs.

True statements, of course, cannot give rise to actionable defamation claims, irrespective of their styling as defamation per se, "defamation by omission" or negligence.  Accordingly, the Court should dismiss this case with prejudice.

Even if the Court entertains Plaintiff's strained premise (that this AI-generated summary is somehow inaccurate because of a hyper-technical definition of "fraud"), Gemini's outputs provide both context and links for the underlying judicial proceedings, and its implied conclusion is a protected opinion that is also not actionable as defamation.

Finally, Plaintiff is a limited purpose public figure in connection with his securities offering. Plaintiff is therefore required to plead facts plausibly showing that the AI-generated summary was published with actual malice–*i.e.*, with knowledge or a high degree of awareness that it is false. His conclusory allegations of notice to Google's legal department fail to do so, not only because there was no falsity about which he *could* alert Google but also because the

---

[1] In light of this silence, it is worth noting that making a purportedly defamatory communication to the plaintiff is not a qualifying "publication" capable of supporting a defamation claim. *Ortiz Algarin v. Fed. Express Corp.*, 56 F. Supp. 2d 172, 174 (D.P.R. 1999)  (requiring publication to someone other than the person defamed); *Porto y Siurano v. Bentley, P.R., Inc.*, 132 D.P.R. 331, 1992 WL 754807 (English Translation) at § IV (P.R. Dec. 23, 1992) (holding that publication to interested parties acting within the scope of their functions is privileged); *see also Martinez v. New England Med. Ctr. Hosps., Inc.*, 307 F. Supp. 2d 257, 269 (D. Mass. 2004) (explaining communications in response to inquiries by plaintiff's associate at the plaintiff's behest were not actionable under Massachusetts law).

documentation that he allegedly provided (i.e., the consent judgment) confirms rather than contradicts the substance of the summary.

Google accordingly moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim.

## II.    FACTUAL BACKGROUND

### A.  The Alleged Gemini Summary And Filings From The SEC Action.

Plaintiff identifies the SEC's civil enforcement action as *SEC v. Grybniak*, No. 1:20-cv-00327-EK-MMH (E.D.N.Y.), hereinafter referred to as the "SEC Action."  (Compl. ¶ 12.) Because the manner in which Gemini allegedly summarized the SEC Action is of central importance to Plaintiff's Complaint, Google attaches true and correct copies of the following as exhibits: the SEC's complaint in the SEC Action as Exhibit 1, hereinafter the "SEC Complaint" or "Ex. 1"; the summary judgment order in the SEC Action as Exhibit 2, hereinafter the "SEC MSJ Order" or "Ex. 2"; and the final judgment in the SEC Action as Exhibit 3, hereinafter the "SEC Final Judgment" or "Ex. 3."  Each of these filings was expressly cited in the alleged Gemini summary attached to the Complaint as the basis for the statements contained therein.  (*See* Compl. Ex. A.)  Each of these filings is a public court record.

While the body of Plaintiff's Complaint focuses on select portions of Gemini's purported summary, Exhibit A of the Complaint shows that Gemini's response contained a variety of additional information that is material to the claim.  In particular, after the initial answer to the prompt, which is the central focus of Plaintiff's claims, the purported summary includes a substantial amount of additional background information that clarifies and contextualizes the scope of the original answer as well as the basis for the same.

First, the purported Gemini summary identifies various allegations set forth in the SEC Complaint. (Compl. Ex. A.) The purported summary makes clear that it is only setting forth the *SEC's* allegations, not adopting those statements. (*Id.*) The section is boldly titled, "The Allegations" and contains cautionary language like, "The complaint alleged . . ." and "According to the SEC . . ." before setting forth information drawn from the SEC Complaint, which the purported Gemini summary clarifies was civil rather than criminal in nature. (*Id.*) For example, the "Allegations" section states, "The complaint alleged that between 2017 and 2018, Grybniak conducted a fraudulent and unregistered Initial Coin Offering (ICO) for 'OPP Tokens,' raising approximately $600,000 from nearly 200 investors." (*Id.*) This is nearly a verbatim recitation of paragraph 1 of the SEC Complaint:

> 1. From September 2017 and October 2018, Opporty and its founder and sole owner, Grybniak, conducted a fraudulent and unregistered initial coin offering ('ICO') of digital asset securities called 'OPP Tokens,' raising approximately $600,000 from nearly 200 investors located in the United States and abroad.

(Ex. 1 ¶ 1.) The purported Gemini summary's statements about how Plaintiff "deceived investors" "[a]ccording to the SEC" are also drawn from the SEC Complaint itself. (*See, e.g.*, Ex. 1 ¶¶ 1–11.)

Second, the purported Gemini summary discusses the SEC MSJ Order from September 2024. (Compl. Ex. A.) The purported summary states:

> **Summary Judgment (September 2024):** The U.S. District Court for the Eastern District of New York granted a partial summary judgment in favor of the SEC, ruling that Grybniak had conducted an illegal, unregistered securities offering. The court also rejected his defenses, including his claim that he was relying on legal counsel.

(*Id.*) This aligns with the SEC MSJ Order itself. (Ex. 2 at 44 (concluding Defendant's "ICO pre-sale, without registration, violated Section 5"), 45–48 (rejecting Defendants' defense that they relied on legal counsel).) Notably, the SEC MSJ Order denied Plaintiff's motion for summary

judgment on the SEC's fraud-related claims.  (*Id.* at 57 ("The Defendants . . . fail to demonstrate that they are entitled to summary judgment on the SEC's Rule 10b-5 claims with regard to any category of alleged misstatements.").  The docket from the SEC Action, a true and correct copy of which is attached hereto as Exhibit 4 ("Ex. 4"), does not reflect the dismissal of the SEC's fraud claims against Plaintiff—voluntarily or otherwise—prior to the SEC Final Judgment.  (*See generally* Ex. 4.)

Third, the purported Gemini summary discusses the SEC Final Judgment from February 2025.  (Compl. Ex. A.)  The purported summary states:

> **Final Judgment (February 2025):** The court entered a final judgment against Grybniak and Opporty.  **Without admitting or denying the allegations**, Grybniak consented to the settlement terms to resolve the fraud and registration violations.

(*Id.* (emphasis original).)  The purported Gemini summary further stated that Grybniak was required to pay a $100,000 civil money penalty and comply with a permanent injunction.  (*Id.*)  Again, the text of the SEC Final Judgment aligns with this description: (1) Plaintiff did consent to the entry of the SEC Final Judgment, which was entered against him (Ex. 3 at 1); and (2) he did not admit or deny the allegations in the Complaint, except that he *did* admit the allegations of the SEC Complaint (which necessarily includes the fraud allegations) for purposes of the "exceptions to discharge" under the Bankruptcy Code (*id.* at 1, 6). As noted above, the fraud claims were not previously dismissed at summary judgment and remained pending at the time of the SEC Final Judgment.  (*See* Ex. 2 at 57; Ex. 4.)  In fact, the SEC Final Judgment included injunctions related to Sections 17(a)(2) and (3) of the Securities Act,[2] two of the fraud provisions at issue in the SEC Complaint. (*Compare* Ex. 3 at 1–2 (entering the injunction on the fraud-related provisions) *and* Ex. 1 at ¶ 12 (alleging violations based on the same fraud-related provisions).)

---

[2] 15 U.S.C. § 77q(a)(2), (3).

6

### B. Plaintiff's Allegations.

Plaintiff asserts three claims against Google: Count I for "Libel / Defamation Per Se"; Count II for "Defamation by Implication and Material Omission"; and Count III for "Defamation (Negligence)" as an alternative to Plaintiff's claim for defamation per se.  (Compl. ¶¶ 31–40.) Each claim is based on purportedly false summaries that Plaintiff alleges were created by Gemini. (*See id.* at ¶¶ 19–24.)  The alleged summaries relate to a civil enforcement action by the SEC against Grybniak and his companies.  (*Id.* at ¶ 12.)  Plaintiff included a purported "representative example[]" of Gemini's outputs as Exhibit A to his Complaint.  (*Id.* at ¶ 21.)

While Exhibit A includes a variety of statements relating to the SEC's enforcement action, Plaintiff's claims focus principally on the alleged initial response to the prompt, "Did Sergii Grybniak commit fraud?" to the exclusion of additional context provided by the remainder of the response.  (*See* Compl.  ¶ 20, Ex. A.)  The alleged response is as follows:

> Yes, according to the U.S. Securities and Exchange Commission (SEC) and federal court rulings, Sergii "Sergy" Grybniak was legally held responsible for making material misrepresentations and engaging in deceptive conduct related to his cryptocurrency venture.

(*Id.*)  Plaintiff further points to statements from the summary that set forth the SEC's "allegations" (which are labeled as such) from the SEC's complaint, including that Plaintiff made a "fraudulent and unregistered Initial Coin Offering" among other allegations, and that Plaintiff "consented to the settlement terms to resolve the fraud and registration violations."  (*Id.* at ¶ 21.)  Plaintiff claims the Gemini summary falsely conveys "Plaintiff was adjudicated to have committed, or admitted committing, fraud."  (*Id.* at ¶ 23.)  Plaintiff alleges that the summary further "creat[es] a false overall impression that Plaintiff is an adjudicated fraudster" by omitting certain information.  (*Id.* at ¶ 24.)

As "harm," Plaintiff cites the Puerto Rico Department of Economic Development and Commerce's ("DDEC") denial of "Plaintiff's application for Act 60 tax-exemption benefits, reciting the SEC's original 2020 allegations and demands as though they described the outcome, while omitting the actual no-admission resolution." (*Id.* at ¶¶ 28–29.) Plaintiff alleges the "DDEC denial reflects the same materially false narrative at issue here," but Plaintiff does not otherwise allege that the DDEC ever encountered the alleged Gemini summary at issue in the Complaint. (*Id.* at ¶ 29.)

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Del-Villar-Rosario v. Puerto Rico Dep't of Just.*, 573 F. Supp. 2d 496, 500 (D.P.R. 2008). A claim is facially plausible only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court need not accept legal conclusions cast in the form of factual allegations. *Id.* "Plaintiffs must set forth 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory.'" *Del-Villar-Rosario*, 573 F. Supp. 2d at 500 (citation omitted).

On a motion to dismiss, the court may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 61 (1st Cir. 2020) (alteration in original) (quotations omitted). A district court does not err in referring to public records or documents referenced in the complaint,

as the court may consider "official public records ... [and] documents sufficiently referred to in the complaint." *Squeri*, 954 F.3d at 66 (quotations omitted). Further, "a 'document effectively merges into the pleadings,' [citation omitted], when the authenticity of that document is unchallenged and the document is 'central to the plaintiff's claim or sufficiently referred to in the complaint, even if [it is] not physically attached to the pleading[.]'" *Rivera-Torres v. Castillo*, 109 F. Supp. 3d 477, 482 (D.P.R. 2015) (alteration in original) (citations omitted). When the face of the complaint establishes that the challenged statements are constitutionally protected opinion, dismissal is appropriate as a matter of law at the pleading stage. *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728–31 (1st Cir. 1992). "To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).

## IV.    ARGUMENT AND CITATION OF AUTHORITIES

Plaintiff's claims fail under Rule 12(b)(6) because the Complaint does not allege any actionable false statement. A private citizen who seeks redress for defamation "must prove the following: (1) that **information that is false** and defamatory was (2) negligently published [to a third party], with the result that (3) the defamed person suffered real damages. [Citation omitted.] Necessarily, the information published must be injurious." *Segarra Jimenez v. Banco Popular, Inc.*, 421 F. Supp. 2d 452, 458 (D.P.R. 2006) (emphasis added); *but see Colon v. Blades*, 914 F. Supp. 2d 193, 197 (D.P.R. 2012) (noting element of damages is not necessary to establish in cases of defamation *per se*). This necessarily requires that the statement at issue be factual in nature. *See Phantom Touring*, 953 F.2d at 727 (explaining that First Amendment protects "statements that 'cannot 'reasonably [be] interpreted as stating actual facts' about an individual'"). If the plaintiff is

a public figure, the plaintiff must also prove that the defendant acted with actual malice. *See Mojica Escobar v. Roca*, 926 F. Supp. 30, 33 (D.P.R. 1996).

The filings in the SEC Action defeat Plaintiffs' claims. The filings in the SEC Action are both matters of public record subject to judicial notice,[3] and incorporated by reference in the Complaint. In fact, Plaintiff's entire case depends on these records, as he claims the purported Gemini summary misrepresented the various outcomes of the SEC Action. The Court may thus consider Exhibits 1 through 4 in connection with Google's motion. *Squeri*, 954 F.3d at 61, 66; *see also See MVM Inc. v. Rodriguez*, 568 F. Supp. 2d 158, 164 (D.P.R. 2008).

### A. Plaintiff Has Not Identified An Actionable Falsity In The Alleged Gemini Summary, Which Is Instead Substantially True.

Plaintiff's Complaint fails to allege an actionable falsity. First, the Plaintiff's theory of defamation fails because Plaintiff has not adequately alleged that any factual assertion within alleged summary is false. Second, and in addition to lacking an actionable falsity, the substance and context of the alleged Gemini summary is constitutionally protected pure opinion as it clearly discloses to readers the factual premises on which it is based (i.e., the filings in the SEC Action).

> i. *The purported Gemini summary is substantially true and Plaintiff has not plausibly alleged falsity.*

Plaintiff's claims fail for the simple reason that Plaintiff has not identified any portion of the alleged summary that is false. Under Puerto Rico law, the falsity of the challenged statement

---

[3] "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). Judicial notice is not necessary in this case given the documents at issue are incorporated by reference in the Complaint. *See Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (considering an "advertising copy contained in the record" without referencing whether such copy is otherwise judicially noticeable). But should the Court determine that the four exhibits cannot be considered in connection with Google's motion without judicial notice, then Google respectfully respects that the Court take notice of the proceedings and filings in the SEC Action.

is an essential, threshold element of any defamation claim. "[T]he defamatory information must be false; that the published information is true is a defense available to a defendant in any type of defamation claim." *Segarra Jimenez*, 421 F. Supp. 2d at 458; *accord Rivera Rodriguez v. First Bank Puerto Rico*, 184 F. Supp. 2d 162, 166 (D.P.R. 2002) (Puerto Rican law requires plaintiff to prove "that the information is false"); *San Juan Star v. Casiano Commc'ns, Inc.*, 85 F. Supp. 2d 89, 94 (D.P.R. 2000).

Moreover, the test for falsity does not demand literal, word-for-word accuracy; rather, "[f]alsity 'overlooks minor inaccuracies and concentrates upon substantial truth.'" *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 108 (1st Cir. 2000) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991)); *see also Villanueva v. Hernandez Class*, 128 D.P.R. 618, 1991 WL 735303 (English Translation) at § III(C) (P.R. 1991) (stating in context of fair report privilege that "a report need not be perfectly 'accurate'; it suffices that it be a substantially accurate summary of the occurrence reported"). "A statement is not false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Veilleux*, 206 F.3d at 108 (quoting *Masson*, 501 U.S. at 516). An alleged defamatory statement should be measured against the entirety of the publication, and not out of context. *Salmon v. Lang*, 57 F.4th 296, 322 (1st Cir. 2022) (alleged defamatory comments "must be looked at in its entirety."); *see also Phantom Touring*, 953 F.2d at 727 (stating "the context in which language appears must be evaluated to see whether 'the general tenor of the article negate[s] this impression'" (citation omitted)). Further, "opinions 'based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public'[ ]are protected from defamation actions by the First Amendment." *Sanchez-Sifonte v. Fonseca*, 2023 WL 5753677, at *11 (D.P.R. 2023) (citation omitted) (punctuation original).

Plaintiff has failed to identify an actionable falsity. First, the purported Gemini summary accurately conveys that the SEC brought a civil action against Grybniak, including for fraud-related claims, which was resolved through a consent judgment in which Grybniak did not admit wrongdoing but which nevertheless held him "legally . . . responsible" for the claims against him. (*See* Compl. Ex. A.) This is not just substantially true—it is entirely accurate. (*See* Ex. 1 ¶¶ 86-111 (describing the fraud allegations in the SEC Complaint); Ex. 2 at 57 (denying Plaintiff's request for summary judgment on the SEC's fraud claims); Ex. 3 at 1–2 (entering the injunction on the fraud-related provisions).) Plaintiff was "held responsible for making material misrepresentations and engaging in deceptive conduct related to his cryptocurrency venture"—i.e., through an injunction, in addition to the rest of the consent judgment—precisely as stated in the purported Gemini summary. (*See* Compl. Ex. A.)

In light of the SEC Final Judgment, Plaintiff's preferred interpretation of the purported Gemini summary (along with his fixation on its opening portion, to the exclusion of its remainder) fares no better. Specifically, Plaintiff complains that the purported Gemini summary "communicate[d] to a reasonable reader that Plaintiff was adjudicated to have committed, or admitted committing, fraud." (Compl. ¶ 23.) The problem for Plaintiff is that such a statement is true: the SEC Final Judgment included judgment on fraud related claims (even though, as the summary notes, Plaintiff did not explicitly admit the allegations). (*See* Ex. 3 at 1–2; *see* also Compl. Ex. A.) A "consent judgment 'constitutes a final judgment on the merits of the cause of action[.]'" *D'Amario v. Butler Hosp.*, 921 F.2d 8, 10 (1st Cir. 1990). At the end of the day, Plaintiff consented to the SEC Final Judgment that held him legally responsible for fraud even if he did not concede the underlying factual allegations. Even if the purported Gemini summary did convey that Plaintiff admitted committing fraud—when in fact it expressly conveyed the opposite—such a

12

summary would still have been substantially true. After all, Plaintiff *did* admit the factual allegations of the SEC Complaint for purposes of the Bankruptcy Code.  (Ex. 3 at 1, 6). The basic import to the average reader is still that Plaintiff admitted committing fraud in some sense. Disclosing legal technicalities accompanying such admission would not meaningfully affect the gist, sting, or substance of such a claim.

A false statement of fact is the sine qua non of defamation. Plaintiff's Complaint fails to identify one. As a result, all of his claims—each of which sounds in defamation—fail and must be dismissed.

ii.    *For avoidance of doubt, Plaintiff's allegations regarding purported omissions fail to state a claim.*

Plaintiff claims that the purported Gemini summary is further defamatory by omitting certain facts in a manner that rendered the summary misleading and defamatory. (Compl. ¶ 24.) While Plaintiff frames the claim as one of defamation by omission, it appears Plaintiff intends to pursue a theory of defamation by implication. *See Sanchez-Sifonte*, 2023 WL 5753677, at *6 ("Defamation by implication occurs when facts are juxtaposed to create a defamatory connection between them, or where facts are omitted to create a defamatory implication."). Regardless of how Plaintiff styles the claim, however, Count II fails for several reasons.

As an initial matter, some of what Plaintiff claims was "omitted" is simply wrong: the fraud claims were not "dropped" and instead remained pending until final judgment. (*See* Ex. 2 at 57.) Plaintiff consented to judgment on those claims and even admitted to those allegations in the complaint for purposes of the Bankruptcy Code. (Ex. 3 at 5–6).

Furthermore, the alleged summary already notes the things that he claims were omitted: e.g., the summary notes the judgment was entered without Grybniak admitting wrongdoing, the summary specifically refers to the action as civil rather than criminal in nature, and the summary

13

identifies the claims on which summary judgment was entered for the SEC as the unregistered securities claims. (*Compare* Ex. A (providing extensive breakdown of the civil allegations, the MSJ Order, and SEC Final Judgment) *and* Compl. ¶ 24 (alleging Gemini omitted dispositive facts of the actual resolution).) All of what Plaintiff claims should have been disclosed was, in fact, disclosed; moreover, he has not identified any additional information that, if disclosed, would make a different impression on the minds of readers.

Regardless, Plaintiff fails to identify any omitted information that somehow creates an impression different from the one apparent on the face of the publication. The substantial truth doctrine operates at the level of overall impression: "A statement is not false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Veilleux*, 206 F.3d at 108. It is not enough for Plaintiff to complain that the alleged Gemini summary did not precisely convey his preferred version of events if a "more fulsome account" would not materially change the reputational sting. *See Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 74 (1st Cir. 2015) (addressing defamation claim at summary judgment under Maine law); *Riley v. Harr*, 292 F.3d 282, 294–95 (1st Cir. 2002) (rejecting plaintiff's argument that book was required to "fully and concomitantly" reveal all points of view at the same time; applying First Amendment principles and New Hampshire law). Here, the overall impression conveyed by the purported Gemini summary is true for the reasons already stated, and Plaintiff cannot save his claims by complaining about purported omissions that change neither the gist nor the sting of the publication at issue.

    *iii.*    *The Gemini summary is protected opinion based on disclosed facts.*

In addition to not identifying an actionable falsity, the purported Gemini summary is not actionable because it discloses the underlying factual premises upon which the conclusions in the

summary are based. As a matter of law, the summary is therefore constitutionally protected "pure opinion," and Plaintiff cannot pursue defamation claims simply because he disagrees with the conclusions contained within the alleged Gemini summary when the factual basis of those conclusions (i.e., the filings in the SEC Action) are disclosed in the summary itself.

"Whether a statement is fact or opinion and whether a statement of fact is susceptible to defamatory interpretation is a question of law for the court." *Sanchez-Sifonte*, 2023 WL 5753677, at \*11 (citing *Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018)). For a court to make this determination, "the context in which the language appears must be evaluated to see whether 'the general tenor of the article negate[s]" the impression that a factual statement is being made. *Phantom Touring*, 953 F.2d at 727. For example, a statement constitutes pure opinion if it is "'based on facts which are set forth in [a] publication or which are otherwise known or available to the reader or listener as a member of the public[.]'" *Sanchez-Sifonte*, 2023 WL 5753677 at \*11 (citation omitted). Such statements are constitutionally "protected from defamation actions by the First Amendment." *Id.*; *see also Phantom Touring*, 953 F.2d at 731 n.13 ("That principle unquestionably excludes from defamation liability . . . statements clearly recognizable as pure opinion because their factual premises are revealed.").

Here, Gemini's purported summary included a "full disclosure" of the underlying facts from which the summary is drawn—i.e., the public court records from the SEC Action. *Id*. at 730. Plaintiff does not contend that those court records are false or do not exist, nor could he. Such records merely reflect the activities of the litigants and the decisions of the court in a civil litigation matter, which is the only reason for which they are cited in the purported Gemini summary. (*Compare* Compl. Ex. A *with* Exs. 1–4.) Without challenging the existence of these underlying records, however, Plaintiff cannot maintain a defamation claim based on the conclusions drawn

from those records. *Sanchez-Sifonte*, 2023 WL 5753677 at *12 (holding that when the facts upon which an opinion is based are disclosed, the opinion constitutes nothing but commentary on the facts presented). This includes the conclusion at the opening of the alleged Gemini summary which opines that, based on the various cited documents, "Yes . . . Grybniak was legally held responsible for making material misrepresentations and engaging in deceptive conduct[.]" (Compl. Ex. A.)

The Court should therefore dismiss the Complaint because the summary is simply pure opinion based on disclosed facts.

## B.  Plaintiff Also Fails To Adequately Allege Actual Malice.

Plaintiff acknowledges that he may be deemed a limited-purpose public figure in connection with the ICO that was the subject of the SEC Litigation and, thus, may be subject to the actual malice standard. (Compl. ¶ 30.) Plaintiff's assumption is correct; however, his belief that he has satisfied the actual malice standard is not.

"[T]he First Amendment—applied to the states via the Fourteenth—bars public figures from recovering damages under state defamation laws unless they show that the defamer acted with 'actual malice[.]'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 52 (1st Cir. 2012). "Actual malice" refers to publishing a statement with actual knowledge that it is false or while harboring serious doubts about its veracity. *Id.* On a motion to dismiss, this requires setting forth well-pleaded facts that plausibly allege actual malice. *See id.* at 55-56. Public figures include, among other things, individuals who have voluntarily placed themselves at the center of public issues. *See Bruno v. Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 588 (1st Cir. 1980).

Here, Plaintiff is a limited public figure in connection with the ICO and the subsequent SEC Litigation based on that ICO. Offering securities for sale to the public voluntarily thrusts the offeror into the public spotlight in a manner sufficient to render the offeror a public figure in connection with said sale. *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977)

(noting defendant company was limited purpose public figure with respect to sale of securities because, among other things, the company was "at the time of the libel, offering to sell its stock to the public, thereby voluntarily thrusting itself into the public arena, at least as to all issues affecting that proposed stock sale"). The fact that the offeror may not have significant "media access" does not alter the analysis. *Id.* Because Plaintiff was engaged in a securities offering to the public (Ex. 1; *see also* Compl. ¶ 30), Plaintiff is a limited purpose public figure "with respect to issues involving [his] offering of securities to the public." *Reliance Ins.*, 442 F. Supp. at 1348.  In connection with this motion, Google also respectfully requests that the Court take judicial notice of news coverage of Plaintiff in connection with his ICO and the SEC Action: Yilun Cheng, *Opporty founder calls SEC's ICO lawsuit 'grossly overstated' and 'untruthful' in an open letter*, Yahoo!finance (Jan. 28, 2020), https://finance.yahoo.com/news/opporty-founder-calls-sec-ico-211254516.html?guccounter=1 (last visited Aug. 9, 2026).[4] Courts may take judicial notice of articles about a plaintiff for purposes of determining whether the plaintiff is a public figure, though not for purposes of the truth of the matters in the article.  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013).

As a result, Plaintiff must adequately plead actual malice but fails to do so. As an initial matter, Google cannot have awareness that the purported Gemini summary was false when, for all the reasons stated above, there was no falsity. Instead, the substance of the purported Gemini summary was drawn from (and in fact correctly summarized) public, third-party sources. In light of such citations, Plaintiff cannot say Google had any reason to harbor serious doubts (let alone that it did in fact harbor such doubts) about the substance of the alleged Gemini summary. *See*

---

[4] The Court may take judicial notice without a separate motion. *See* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."); *see also* Fed. R. Evid. 201(c)(2) (providing the court "must take judicial notice if a party requests it and the court is supplied with the necessary information.").

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 704 (11th Cir. 2016) (holding plaintiff had not alleged actual malice in part because the substance of the article showed the reporters engaged in due diligence).

This is true despite Plaintiff's conclusory allegations of giving nonspecific notice to Google about purported errors in the alleged Gemini summary (none of which he sets forth in detail). Plaintiff contends he can show actual malice because "Plaintiff supplied repeated, specific corrections over roughly seven months, identifying the precise false statements and providing the final judgment . . . and Google nonetheless continued to publish the falsehoods[.]"[5] (Compl. ¶ 30; *see also id.* at ¶ 25 (alleging he made "communications to Google's legal department".) This allegation fails for a number of reasons. First, Plaintiff's allegation that he notified Google about "false statements" is wholly conclusory and fails to plausibly allege the falsities about which Google was supposedly aware. *See Schatz*, 669 F.3d at 55 (stating that only "non-conclusory, non-speculative" allegations may be considered). Second, even if this allegation were construed to mean that Plaintiff alerted Google to all of the "falsities" alleged in the Complaint, this too would be insufficient because, as already discussed, each of Plaintiff's claimed "falsities" are in fact truthful, accurate statements. For the same reason, Plaintiff's contention that he provided the SEC Final Judgment to Google fails to show that Google, or anyone within Google, had reason to doubt

---

[5] Plaintiff separately alleges "Google's own product acknowledged the falsity and committed to correcting it[.]"  (Compl. ¶ 30; *see also id.* at ¶ 26.) This allegation is irrelevant for the simple reason that products are not people and lack any form of scienter. *See Thaler v. Perlmutter*, 130 F.4th 1039, 1046 (D.C. Cir. 2025) (noting that "[m]achines do not have . . . *mentes reae*"). Actual malice requires facts showing that the one responsible for the publication subjectively doubted its veracity. *Levesque v. Doocy*, 560 F.3d 82, 90 (1st Cir. 2009) (describing the actual malice standard as wholly subjective). Defamation claims without some form of human fault are constitutionally prohibited. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (holding states may not impose defamation liability without fault).

the veracity of the alleged Gemini summary, which instead accurately and fairly described that same document.

Plaintiff's barebones allegations that he "notified Google" about issues with the purported Gemini summary fail to plausibly show that Google either knew or was highly aware that the purported Gemini summary was false. As a result, Plaintiff has not adequately alleged actual malice, requiring the dismissal of his claims for this separate reason.

## C. CONCLUSION

Plaintiff was the subject of an SEC enforcement action in which the government characterized his ICO as "fraudulent," in which a federal court found the SEC's evidence sufficient to overcome Plaintiff's motion for summary judgment on such claims, and in which Plaintiff consented to the entry of judgment against himself on all the claims brought by the SEC. He now asks the Court to hold that an automatically generated summary of the SEC Action's proceedings, which accurately conveys the substance of the same, is defamatory. It is not. Google respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties.

In San Juan, Puerto Rico, this 10th day of August 2026.

**/s/ ISMAEL H. HERRERO III**
**Law Office of Herrero III & Associates, P.S.C.**
Ismael H. Herrero III
USDC-PR #203002
P.O. Box 362159
San Juan, Puerto Rico 00936-2159
T: (787) 754-5000
E: herreroilll@herrerolaw.com

19

**BRYAN CAVE LEIGHTON PAISNER LLP**
Brian M. Underwood *(pro hac vice forthcoming)*
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, GA 30309
T: (404) 572-6649
E: brian.underwood@bclplaw.com
  *Attorneys for Defendant Google LLC*

20