**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| SERGII GRYBNIAK,<br><br>Plaintiff,<br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:26-cv-1366-SCC |

**<u>DEFENDANT GOOGLE LLC'S RENEWED MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

**Law Office of Herrero III & Associates, P.S.C.**
Ismael H. Herrero III USDC-PR Bar No. 203002
Edificio Chubb, 33 C. Resolución Piso 2
Suite 201B
San Juan, Puerto Rico 00920
T: (787) 754-5000
E: herreroilll@herrerolaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
Brian M. Underwood, Jr. *(pro hac vice)*
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, GA 30309
T: (404) 572-6649
F: (404) 420 0649
E: brian.underwood@bclplaw.com

*Attorneys for Defendant Google LLC*

## I. INTRODUCTION

Plaintiff's First Amended Complaint ("FAC," ECF No. 15) wholly fails to state a claim of defamation against Google, lacking such elements as third-party publication, reputational injury, falsity and that Google acted with the constitutionally-required "actual malice." It is due to be dismissed, with prejudice.

Plaintiff sues Google based on how Gemini—Google's AI assistant—allegedly described an SEC civil action against Plaintiff and his companies (the "SEC Action").[1] The alleged Gemini summary cross-referenced various filings in the SEC Action, which Google submitted with its first motion to dismiss, including: (1) the "SEC Complaint" setting forth the SEC's allegations (ECF No. 8-1); (2) the "SEC MSJ Order" addressing the parties' cross motions for summary judgment (ECF No. 8-2); and (3) the "SEC Final Judgment" (ECF No. 8-3).[2] Along with a copy of the SEC Action's docket (ECF No. 8-4), Plaintiff admits those same filings are "true and correct copies of the principal records of the SEC Action[.]" (ECF No. 15 ¶ 18.) Plaintiff does not even contest the veracity of the SEC's original allegations:

> Plaintiff does not ask this Court to relitigate the underlying SEC enforcement action. Plaintiff does not deny the allegations the SEC made in that action, and nothing in this pleading is intended or should be construed as denying them or as suggesting that the SEC's complaint was without factual basis.

(ECF No 15 ¶ 2.) Plaintiff has now admitted away his case.

The records from the SEC Action corroborate each and every statement with which Plaintiff takes issue. The purported Gemini summary accurately described the SEC Complaint, correctly summarized the MSJ Order, and faithfully repeated the essential details of the Final

[1] The SEC Action is *SEC v. Grybniak*, No. 1:20-cv-00327-EK-MMH (E.D.N.Y.). (ECF No. 15 ¶ 17.)

[2] For ease of reference, citations to these exhibits are to the original page numbers rather than the ECF-assigned numbers in this action.

Judgment entered by the United States District Court for the Eastern District of New York, including (in bold) that Plaintiff consented to the Final Judgment "[w]ithout admitting or denying the allegations" by the SEC. (*Compare* ECF No. 15-1 *with* ECF No. 8-3 at 1.) Moreover, because the Final Judgment included judgment on the fraud-based claims against Plaintiff, the purported Gemini summary was further correct that Plaintiff was "legally held responsible for making material misrepresentations and engaging in deceptive conduct related to his cryptocurrency venture." (ECF No. 15-1.)

Plaintiff cannot dispute these basic facts. Though Plaintiff insists he did not admit or deny the SEC's fraud-based allegations, the purported Gemini summary clearly discloses that detail. In any event, neither that allegation nor Plaintiff's other quibbles in wording change the fact that there is a final judgment by a federal court ruling in favor of the SEC and holding Plaintiff liable under fraud-based statutes. The summary, therefore, is substantially true, and not actionable.

Plaintiff's additions to his FAC further confirm the propriety of dismissal. For example, Plaintiff's new allegations regarding actual malice confirm that Plaintiff failed to put anyone at Google on notice of any alleged falsity, as there is no evidence a human ever received his alleged "notice." (*See* ECF No. 15 ¶ 64.) That aside, Plaintiff's allegation that he provided a "procedural history of the SEC Action" (ECF No. 15 ¶ 62) simply does not show Google had any reason to subjectively doubt the Gemini summary—indeed, that same procedural history, as set forth in the SEC Action's public filings, *confirms* the alleged summary's substance.

The rewritten FAC also fails on the essential elements of publication and damages. On publication, the FAC claims Gemini published the alleged summary to Plaintiff over a year ago, and Plaintiff's only example of third-party publication was invited by Plaintiff himself (and obviously done to avoid the statute of limitations). (ECF No. 15 ¶¶ 39, 57–59.) That is not

publication; it is, instead, prohibited "invited libel." The claim of reputational injury is equally ephemeral: Plaintiff disclaims any reliance "on an automatic presumption of reputational injury" and only "seeks recovery for actual damages[.]" (ECF No. 15 ¶ 84.) Yet his only allegation of actual harm is merely "illustration" that does not "presently attribut[e] that particular [harm] to Google." (ECF No. 15 ¶ 80.) The FAC therefore establishes that any "generative-AI" defamation here is hypothetical.

Google accordingly renews its motion to dismiss and asks that the Court dismiss Plaintiff's FAC with prejudice for failure to state a claim.

## II. FACTUAL BACKGROUND

Although the FAC is a substantial revision of the original Complaint, Plaintiff's theory of recovery and the substance of his material allegations remain unchanged. Any additional allegations appear largely immaterial, such as Plaintiff's lengthy characterization of documents already in the record. (*See, e.g.*, ECF No. 15 ¶¶ 17-37 (offering Plaintiff's characterization of the SEC action), ¶ 44 (offering Plaintiff's interpretation of what the purported Gemini output conveys).) The factual summary below is therefore largely duplicative of Google's first motion to dismiss, with minor supplementation to address any revisions of note.

### A. The Alleged Gemini Summary And Filings From The SEC Action.

Plaintiff's case focuses on how Gemini allegedly summarized the filings, activities, and outcome of the SEC Action. (*See generally* ECF No. 15.) The case record already contains key filings from the SEC Action, including the SEC Complaint, the SEC MSJ Order, the SEC Final Judgment, and the docket from the SEC Action. (ECF Nos. 8-1, 8-2, 8-3, 8-4.) Plaintiff expressly incorporates each of these documents into his FAC, admitting they are "true and correct copies of the principal records of the SEC Action[.]" (ECF No. 15 ¶¶ 18-34.) Each of these filings is a public

record, and each was expressly cited in the alleged Gemini summary attached to the FAC as the basis for the statements contained therein. (*See generally* ECF No. 15-1.)

The crux of Plaintiff's claims focuses largely on the opening portion of the proposed Gemini summary which responds to the prompt, "Did Sergey Grybniak commit fraud?"—a query which, Plaintiff admits, was performed at his express request. (*E.g.*, ECF No. 15 ¶¶ 39–41, 44; ECF No. 15-1.) The initial alleged output of this prompt, which is subsequently explained with further information, is as follows:

> Yes, according to the U.S. Securities and Exchange Commission (SEC) and federal court rulings, Sergii "Sergy" Grybniak was legally held responsible for making material misrepresentations and engaging in deceptive conduct related to his cryptocurrency venture.
>
> A breakdown of the case and its outcome establishes the following facts: . . .

(ECF No. 15-1.) Immediately thereafter, the alleged summary proceeds to summarize information drawn from the various case filings at issue.

First, the purported Gemini summary identifies various allegations set forth in the SEC Complaint. (ECF No. 15-1.) The purported summary makes clear that it is only setting forth the *SEC's* allegations, not adopting those statements. (*Id.*) The section is boldly titled, "The Allegations" and contains cautionary language like, "The complaint alleged . . ." and "According to the SEC . . ." before setting forth information drawn from the SEC Complaint, which the purported Gemini summary clarifies was "civil" rather than criminal in nature. (*Id.*) For example, the "Allegations" section states, "The complaint alleged that between 2017 and 2018, Grybniak conducted a fraudulent and unregistered Initial Coin Offering (ICO) for 'OPP Tokens,' raising approximately $600,000 from nearly 200 investors." (*Id.*) This is nearly a verbatim recitation of paragraph 1 of the SEC Complaint:

> 1. From September 2017 and October 2018, Opporty and its founder and sole owner, Grybniak, conducted a fraudulent and unregistered initial coin offering

> ('ICO') of digital asset securities called 'OPP Tokens,' raising approximately $600,000 from nearly 200 investors located in the United States and abroad.

(ECF No. 8-1 ¶ 1.) The purported Gemini summary's statements about how Plaintiff "deceived investors" "[a]ccording to the SEC" are also drawn from the SEC Complaint itself. (*See, e.g.*, ECF No. 8-1 ¶¶ 1–11.)

Second, the purported Gemini summary discusses the SEC MSJ Order from September 2024. (ECF No. 15-1.) The purported summary states:

> **Summary Judgment (September 2024):** The U.S. District Court for the Eastern District of New York granted a partial summary judgment in favor of the SEC, ruling that Grybniak had conducted an illegal, unregistered securities offering. The court also rejected his defenses, including his claim that he was relying on legal counsel.

(*Id.*) This aligns with the SEC MSJ Order itself. (ECF No. 8-2 at 44 (concluding Defendant's "ICO pre-sale, without registration, violated Section 5"), 45–48 (rejecting Defendants' defense that they relied on legal counsel).)[3] Notably, the SEC MSJ Order denied Plaintiff's motion for summary judgment on some of the SEC's fraud-related claims. (*Id.* at 57 ("The Defendants . . . fail to demonstrate that they are entitled to summary judgment on the SEC's Rule 10b-5 claims with regard to any category of alleged misstatements."). The docket from the SEC Action does not reflect the dismissal of the SEC's fraud claims against Plaintiff—voluntarily or otherwise—prior to the SEC Final Judgment. (*See generally* ECF No. 8-4.) Despite previously alleging that the fraud-based claims were "dropped," Plaintiff now concedes that such claims were not withdrawn prior to the SEC Final Judgment. (*Compare* ECF No. 1 ¶ 24 *with* ECF No. 15 ¶ 54.)

Third, the purported Gemini summary discusses the SEC Final Judgment from February 2025. (ECF No. 15-1.) The purported summary states:

[3] Pin cites to the pages in the SEC Action's filings are to the page numbers in the original action.

> **Final Judgment (February 2025):** The court entered a final judgment against Grybniak and Opporty. **Without admitting or denying the allegations**, Grybniak consented to the settlement terms to resolve the fraud and registration violations.

(*Id.* (emphasis original).) The purported Gemini summary further stated that Grybniak was required to pay a $100,000 civil money penalty and comply with a permanent injunction. (*Id.*) Again, the text of the SEC Final Judgment aligns with this description: (1) Plaintiff did consent to the entry of the SEC Final Judgment, which was entered against him (ECF No. 8-3 at 1); (2) he did not admit or deny the allegations in the SEC Complaint, except that he *did* admit the allegations of the SEC Complaint (which necessarily includes the fraud allegations) for purposes of the "exceptions to discharge" under the Bankruptcy Code (*id.* at 1, 6); (3) he was assessed a $100,000 civil penalty under 15 U.S.C. § 77t(d) (*id.* at 4); and (4) he was "permanently restrained and enjoined from violating Sections 17(a)(2) and (3) of the Securities Act of 1933 (the 'Securities Act') [15 U.S.C. § 77q(a)(2), (3)]," two of the fraud-based claims from the SEC Complaint (*id.* at 1–2; ECF No. 8-1 ¶ 12 (alleging violations of the same provisions)).[4] As already noted, and as Plaintiff admits, the fraud claims were still pending at the time of the Final Judgment. (ECF No. 15 ¶ 54; *see also* ECF No. 8-4 (containing the docket which does not reflect the dismissal of such

---

[4] The pertinent statutory language is as follows:

> (a) Use of interstate commerce for purpose of fraud or deceit
> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly--
> * * *
> (2) to obtain money or property by means of any ***untrue statement of a material fact*** or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a ***fraud or deceit*** upon the purchaser.

15 U.S.C. § 77q(a)(2), (3) (emphasis added).

claims).) Thus, the Final Judgment necessarily "resolve[d]" such claims, as indicated in the purported Gemini summary. (ECF No. 15-1 at 2.)

**B. Plaintiff's Allegations.**

Plaintiff asserts three claims against Google: Count I for "Defamation (Libel) Under Puerto Rico Law"; Count II for "Defamation by Implication and Material Omission"; and Count III for "Defamation (Negligence)" as an "alternative" claim. (ECF No. 15 ¶¶ 81–92.) Although Plaintiff alleges Count III should apply "[t]o the extent any statement is determined not be actionable per se" (*id.* at ¶ 92), this claim wholly duplicative and subsumed within the other two counts based on Plaintiff's express disclaimer that he "seeks recovery for actual damages and does not rely on an automatic presumption of reputational injury" (in other words, defamation "per se") (*id.* at ¶ 84).

Each claim is based on purportedly false summaries that Plaintiff alleges were created by Gemini. (*See id.* at ¶¶ 81–92.) Plaintiff claims to have become aware that Gemini was generating the alleged output at least as of May 21, 2025. (*See id.* at ¶ 57.) Plaintiff included a purported representative example of Gemini's outputs as Exhibit A to his FAC, which he purports to have obtained on or about May 27, 2026—more than a year later—after instructing an unidentified third party "to check what Gemini was reporting about Plaintiff and to preserve what appeared."[5] (*Id.* at ¶¶ 39, 93.) Plaintiff does not identify any other instance of anyone inputting the precise prompt at issue or receiving the same output; instead, Plaintiff alleges simply that because it was possible for Gemini to provide the purportedly defamatory output "as a matter of routine operation," then it has ("on information and belief") "published the same or materially identical statements to other third-party recipients[.]" (*Id.* at ¶ 46.)

[5] Plaintiff alleges that this third-party in fact ran multiple "prompts," also at his request, "concerning Plaintiff's background, trustworthiness, and legal history[.]" (ECF No. 15 ¶ 39.)

Plaintiff complains the purported summary—including, in particular, its initial response to the prompt, "Did Sergii Grybniak commit fraud?"—"would reasonably convey that federal courts had determined Plaintiff engaged in deceptive conduct, rather than that the SEC had made allegations that were never tried." (*Se* ECF No. 15 ¶¶ 33–41, 44.) Plaintiff's claim advances three principal theories as to why the purported Gemini summary was false: (1) that the Gemini summary treats the SEC's allegations as "established, adjudicated fact" when, according to plaintiff, they "were only ever unproven allegations" (*id.* at ¶ 49); (2) that Gemini incorrectly responded that Plaintiff was held responsible for fraud when the claims referenced in the consent judgment "do not require scienter" (*id.* at ¶ 50); and (3) the summary omitted a wide array of (ultimately immaterial) information, including that the injunction was based on Sections 5, 17(a)(2), 17(a)(3) of the Securities Act rather than other sections, that "no criminal proceeding was ever brought" (which the summary does not allege), and other similarly tangential "omissions" (*id.* at ¶ 51).

As "harm," Plaintiff makes a conclusory allegation of "reputational harm, harm to his profession and business, and emotional distress[.]" (*Id.* at ¶ 79.) Plaintiff does not set forth any facts showing such harm. Instead, he cites the Puerto Rico Department of Economic Development and Commerce's ("DDEC") denial of "Plaintiff's application for Act 60 tax-exemption benefits, reciting the SEC's 2020 allegations . . . as though they described the outcome" as an "illustration" of the harm that "*can*" result from the publication. (*Id.* at ¶ 80 (emphasis added).) Plaintiff does not, however, attribute the DDEC's decision to Google, and Plaintiff admits the "record does not establish whether the Department encountered or relied upon [the alleged] Gemini output[.]" (*Id.*)

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Del-Villar-Rosario v. Puerto Rico Dep't of Just.*, 573 F. Supp. 2d 496, 500 (D.P.R. 2008). A claim is facially plausible only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court need not accept legal conclusions cast in the form of factual allegations. *Id.* "Plaintiffs must set forth 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory.'" *Del-Villar-Rosario*, 573 F. Supp. 2d at 500 (citation omitted).

On a motion to dismiss, the court may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 61 (1st Cir. 2020) (alteration in original) (quotations omitted). A district court does not err in referring to public records or documents referenced in the complaint, as the court may consider "official public records ... [and] documents sufficiently referred to in the complaint." *Squeri*, 954 F.3d at 66 (quotations omitted). Further, "a 'document effectively merges into the pleadings,' [citation omitted], when the authenticity of that document is unchallenged and the document is 'central to the plaintiff's claim or sufficiently referred to in the complaint, even if [it is] not physically attached to the pleading[.]'" *Rivera-Torres v. Castillo*, 109 F. Supp. 3d 477, 482 (D.P.R. 2015) (alteration in original) (citations omitted). When the face of the complaint establishes that the challenged statements are constitutionally protected opinion, dismissal is

appropriate as a matter of law at the pleading stage. *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728–31 (1st Cir. 1992). "To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).

## IV. ARGUMENT AND CITATION OF AUTHORITIES

Plaintiff's claims fail under Rule 12(b)(6) because the FAC does not allege a valid third third-party publication of any actionable false statement, let alone one that caused damages to Plaintiff. A private citizen who seeks redress for defamation "must prove the following: (1) that information that is false and defamatory was (2) negligently published [to a third party], with the result that (3) the defamed person suffered real damages. [Citation omitted.] Necessarily, the information published must be injurious." *Segarra Jimenez v. Banco Popular, Inc.*, 421 F. Supp. 2d 452, 458 (D.P.R. 2006) (emphasis added). This necessarily requires that the statement at issue be factual in nature. *See Phantom Touring*, 953 F.2d at 727 (explaining that First Amendment protects "statements that 'cannot 'reasonably [be] interpreted as stating actual facts' about an individual'"). If the plaintiff is a public figure, the plaintiff must also prove that the defendant acted with actual malice. *See Mojica Escobar v. Roca*, 926 F. Supp. 30, 33 (D.P.R. 1996).

In addition to Plaintiff's insufficient allegations, the filings in the SEC Action defeat Plaintiffs' claims. The filings in the SEC Action are both matters of public record subject to judicial notice, are incorporated by reference in the FAC, and the defamation claim is based solely on Gemini's summary of same. The Court may thus consider Exhibits 1 through 4 in connection with Google's motion. *Squeri*, 954 F.3d at 61, 66; *see also See MVM Inc. v. Rodriguez*, 568 F. Supp. 2d 158, 164 (D.P.R. 2008).

**A. Plaintiff Has Not Identified A Bona Fide Third-Party Publication.**

Plaintiff's claims are clearly manufactured. Unlike traditional forms of media, outputs like Gemini are not "published" in a fixed form for anyone to happen upon. Instead, as Plaintiff is aware, Gemini only provides information in response to a specific user query, and the outputs may vary upon each such query. (*See* ECF No. 15 at ¶¶ 10, 12.) Given the potentially infinite number of queries and outputs from generative AI systems—including the very real possibility that queries can "force" an AI to provide a defamatory output—the publication element is critical. It is not enough to say it is possible for an AI system like Gemini to issue a false and defamatory output. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining federal pleading standards "asks for more than a sheer possibility that a defendant has acted unlawfully"). Instead, a Plaintiff must set forth facts plausibly showing an *actual* publication to a third party—not just that the content was encountered by a third party, but the context in which the third party prompted the AI system to generate that content.[6] Otherwise, enterprising Plaintiffs—with enough time and the assistance of associates—can simply solicit defamatory information from AI systems until they are able to bring a claim.

Such is the case here. The *only* pleaded instance of a third party encountering the purported Gemini summary is when Plaintiff specifically solicited that individual to input prompts to Gemini on his behalf—not just one, but apparently multiple "prompts" about Plaintiff. (ECF No. 15 ¶ 39.) This was after Plaintiff had been aware, for more than a year and across repeated queries, that it

[6] Indeed, outside the novel context of generative AI, other jurisdictions often require the Plaintiff to plead basic details of the publication before a defamation claim can proceed. *See Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192-93 (D. Mass. 2015) ("Merely alleging that unnamed Target agents or employees made defamatory statements about the propriety of Plaintiff's conduct does not explain the essential 'who, what, when, and where,' and it does not give Target fair notice of the factual basis for Plaintiff's defamation claim."). Such details are all the more critical in cases of generative AI given the at-issue publication does not exist until requested by a user.

was possible for Gemini to generate the outputs about which he now complains (including as recently as *two days* before his enlistment of a third party's assistance). (*See* ECF No. 15 ¶¶ 57, 66 (alleging he began complaining about the outputs in May 2025 until the "publications at issue" in May 2026).) This is not a bona fide third-party publication; instead, it is invited libel. *See Ortiz Algarin v. Federal Express Corp.*, 56 F. Supp. 2d 172, 174 (D.P.R. 1999) (explaining "[o]rdinarily, the element of publication is not present when the injured party communicates the defamatory statement him or herself to third person" except in cases like "compelled self-disclosure"); *Vargas v. Royal Bank of Canada*, 604 F. Supp. 1036, 1044 (D.P.R. 1985) (noting publications are not ordinarily actionable when made by plaintiff or to others' at plaintiff's initiation); *see also Porto y Siurano v. Bentley, P.R., Inc.*, 132 D.P.R. 331, 1992 WL 754807 (English Translation) at § IV (P.R. Dec. 23, 1992) (explaining that publication to interested parties acting within the scope of their functions is privileged); *see also Martinez v. New England Med. Ctr. Hosps., Inc.*, 307 F. Supp. 2d 257, 269 (D. Mass. 2004) (explaining communications in response to inquiries by plaintiff's associate at the plaintiff's behest were not actionable under Massachusetts law).

Besides this single instance of invited libel, no other form of publication is alleged beyond the mere possibility that Gemini could create the outputs at issue *if* users "query Gemini about Plaintiff." (*See* ECF No. 15 ¶ 46.) This possibility, however, is nothing more than a conclusory recitation of the publication element without any facts from which it could be determined that a publication actually occurred. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

As a result, and based on nothing but Plaintiff's own allegations, the *only* reason the alleged Gemini summary *ever* reached the eyes of anyone other than Plaintiff is because a Plaintiff sought that outcome. Such a claim is not actionable.

**B. Plaintiff Has Not Adequately Alleged Actual Damage.**

Plaintiff further fails to plead any qualifying damage to support his defamation claims. In his FAC, Plaintiff disclaims pursuing any theory based on defamation *per se*—in his words, one based on "an automatic presumption of reputational injury."[7] (ECF No. 15 ¶ 84 (alleging that the statements fall within "traditional per se categories" but that, regardless, he "does not rely on" a theory of presumed damages.) Plaintiff was therefore required to plead facts showing damages as an element of his claim. *See Segarra Jimenez*, 421 F. Supp. 2d at 458. Plaintiff's only suggestions any damages, however, are either wholly conclusory (ECF No. 15 ¶ 79) or, by Plaintiff's admission, not attributable to any conduct by Google (*id.* at ¶ 80.) Plaintiff's claims cannot proceed on mere conclusions. *Iqbal*, 556 U.S. at 663-64.

**C. Plaintiff Has Not Identified An Actionable Falsity In The Alleged Gemini Summary, Which Is Instead Substantially True.**

Plaintiff's FAC also fails to allege an actionable falsity. First, the Plaintiff's theory of defamation fails because Plaintiff has not adequately alleged that any factual assertion within alleged summary is false. Second, and in addition to lacking an actionable falsity, the substance and context of the alleged Gemini summary is constitutionally protected pure opinion as it clearly discloses to readers the factual premises on which it is based (i.e., the filings in the SEC Action).

---

[7] Even without this pleaded disclaimer, the purported Gemini summary clearly specifies that Plaintiff was subject to a "***civil*** enforcement action" rather than imputing any ***criminal*** wrongdoing to Plaintiff, rendering the doctrine of defamation per se inapplicable. (ECF No. 15-1 at 1.)

i. *The purported Gemini summary is substantially true and Plaintiff has not plausibly alleged falsity.*

Plaintiff's claims fail for the simple reason that Plaintiff has not identified any portion of the alleged summary that is false. Under Puerto Rico law, the falsity of the challenged statement is an essential, threshold element of any defamation claim. "[T]he defamatory information must be false; that the published information is true is a defense available to a defendant in any type of defamation claim." *Segarra Jimenez*, 421 F. Supp. 2d at 458; *accord Rivera Rodriguez v. First Bank Puerto Rico*, 184 F. Supp. 2d 162, 166 (D.P.R. 2002) (Puerto Rican law requires plaintiff to prove "that the information is false"); *San Juan Star v. Casiano Commc'ns, Inc.*, 85 F. Supp. 2d 89, 94 (D.P.R. 2000).

Moreover, the test for falsity does not demand literal, word-for-word accuracy; rather, "[f]alsity 'overlooks minor inaccuracies and concentrates upon substantial truth.'" *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 108 (1st Cir. 2000) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991)); *see also Villanueva v. Hernandez Class*, 128 D.P.R. 618, 1991 WL 735303 (English Translation) at § III(C) (P.R. June 25, 1991) (stating in context of fair report privilege that "a report need not be perfectly 'accurate'; it suffices that it be a substantially accurate summary of the occurrence reported"). "A statement is not false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Veilleux*, 206 F.3d at 108 (quoting *Masson*, 501 U.S. at 516). An alleged defamatory statement should be measured against the entirety of the publication, and not out of context. *Salmon v. Lang*, 57 F.4th 296, 322 (1st Cir. 2022) (alleged defamatory comments "must be looked at in its entirety."); *see also Phantom Touring*, 953 F.2d at 727 (stating "the context in which language appears must be evaluated to see whether 'the general tenor of the article negate[s] this impression'" (citation omitted)). Further, "opinions 'based on facts which are set forth in the publication or which are

otherwise known or available to the reader or listener as a member of the public'[ ]are protected from defamation actions by *the First Amendmen*t." *Sanchez-Sifonte v. Fonseca*, 2023 WL 5753677, at *11 (D.P.R. 2023) (emphasis added) (citation omitted) (punctuation original).

Plaintiff has failed to identify an actionable falsity. First, the purported Gemini summary accurately conveys that the SEC brought a civil action against Grybniak, including for fraud-related claims, which was resolved through a consent judgment in which Grybniak did not admit wrongdoing but which nevertheless held him "legally . . . responsible" for the claims against him. (*See* ECF No. 15-1.) This is not just substantially true—it is entirely accurate. (*See* ECF No. 8-1 ¶¶ 86-111 (describing the fraud allegations in the SEC Complaint); ECF No. 8-2 at 57 (denying Plaintiff's request for summary judgment on SEC's fraud claims); ECF No. 8-3 at 1–2 (entering the injunction on fraud-related provisions).) Plaintiff was "held responsible for making material misrepresentations and engaging in deceptive conduct related to his cryptocurrency venture"—i.e., through an injunction, in addition to the rest of the consent judgment—precisely as stated in the purported Gemini summary. (*See* ECF No. 15-1.)

Plaintiff's preferred interpretation of the purported Gemini summary (along with his fixation on its opening portion, to the exclusion of its remainder) fares no better. First, it is not permissible for Plaintiff to isolate any portion of the proposed Gemini summary out of context. *See Salmon*, 57 F.4th at 320. For example, Plaintiff complains that Gemini allegedly responded "Yes" to whether he committed fraud and cited "federal court rulings" as the source of this conclusion. (ECF No. 15 ¶ 44.) This statement, however, cannot be divorced from the remainder of the answer, which specifically identifies the ruling at issue: i.e., the SEC Final Judgment "against Grybniak" on "fraud and registration violations" to which Plaintiff consented "[w]ithout

admitting or denying the allegations[.]" (*See generally* ECF No. 15-1.) No aspect of that summary is false, let alone substantially so.

Second, Plaintiff's self-serving interpretation of the alleged Gemini summary fails even if taken at face value. Plaintiff complains that the purported Gemini summary "would reasonably convey that federal courts had determined that Plaintiff engaged in deceptive conduct, rather than that the SEC had made allegations that were never tried." (ECF No. 15 ¶ 44; *see also id.* at ¶¶ 51-52 (complaining that the SEC Final Judgment did not include "findings of fact").) The problem for Plaintiff is that such a statement is contradicted by both the purported Gemini summary and the filings in the SEC Action. First, the SEC Action is abundantly clear that the matter was resolved through a consent judgment, rather than a trial, and that Plaintiff agreed to the consent judgment "[w]ithout admitting or denying the allegations[.]" (ECF No. 15-1 at 2.) Second, the SEC Final Judgment included judgment against Plaintiff on at least two fraud-related claims: Section 17(a)(2) of the Securities Act (which pertains to "untrue" statements of material fact or "misleading" omissions) and Section 17(a)(3) of the Securities Act (which pertains to "fraud or deceit." (*See* ECF No. 8-3 at 1–2.) A "consent judgment 'constitutes a final judgment on the merits of the cause of action[.]'" *D'Amario v. Butler Hosp.*, 921 F.2d 8, 10 (1st Cir. 1990). To the extent Plaintiff complains that a "judgment" is not a "ruling" (*see* ECF No. 15 ¶ 53), such an argument flies in the face of basic legal lexicography. *Compare Ruling*, *Black's Law Dictionary* (12th ed. 2024) ("The outcome of a court's decision either on some point of law or on *the case as a whole*." (emphasis added)) *with Judgment*, *Black's Law Dictionary* (12th ed. 2024) ("A court or other tribunal's final determination of the rights and obligations of the parties in a case; also, the act or action of making such a determination."). Thus, and contrary to Plaintiff's contentions, the SEC

Action very much resulted in a final ruling on the merits against Plaintiff which held him liable for fraud.

At the end of the day, Plaintiff consented to the SEC Final Judgment that held him legally responsible for fraud even if he did not concede the underlying factual allegations (which, again, the alleged Gemini summary disclosed). Even if the purported Gemini summary did convey that Plaintiff admitted committing fraud—when in fact it expressly conveyed the opposite—such a summary would still have been substantially true. After all, Plaintiff *did* admit the factual allegations of the SEC Complaint for purposes of the Bankruptcy Code. (ECF No. 8-3 at 1, 6.) Moreover, Plaintiff insists that "nothing in this pleading is intended or should be construed as denying" the SEC's allegations in the SEC Action. (ECF No. 15 ¶ 2.) The basic import to the average reader is still that Plaintiff admitted committing fraud in some sense and does not contest the veracity of the SEC's allegations. Disclosing legal technicalities accompanying such admission would not meaningfully affect the gist, sting, or substance of such a claim.

A false statement of fact is the sine qua non of defamation. Plaintiff's FAC fails to identify one and, therefore, it must be dismissed.

*ii. For avoidance of doubt, Plaintiff's allegations regarding purported omissions fail to state a claim.*

Plaintiff claims that the purported Gemini summary is further defamatory by omitting certain facts in a manner that rendered the summary misleading and defamatory. (ECF No. 15 ¶ 51.) While Plaintiff frames the claim as one of defamation by omission, it appears Plaintiff intends to pursue a theory of defamation by implication. *See Sanchez-Sifonte*, 2023 WL 5753677, at *6 (applying Florida law) ("Defamation by implication occurs when facts are juxtaposed to create a defamatory connection between them, or where facts are omitted to create a defamatory

implication."). Regardless of how Plaintiff styles the claim, however, Count II fails for several reasons.

As an initial matter, some of what Plaintiff claims was "omitted" is already apparent from the face of the purported Gemini summary. For example, Plaintiff complains that "no criminal proceeding was ever brought" and the "allegations were never tried[.]" (ECF No. 15 ¶¶ 51-52.) The purported Gemini summary already discloses, however, that the SEC's action was "civil" in nature and was resolved through a consent judgment (i.e., rather than a trial). (*See generally* ECF No. 15-1.)

Regardless, Plaintiff fails to identify any omitted information that somehow creates an impression different from the one apparent on the face of the publication. The substantial truth doctrine operates at the level of overall impression: "A statement is not false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"[8] *Veilleux*, 206 F.3d at 108. It is not enough for Plaintiff to complain that the alleged Gemini summary did not precisely convey his preferred version of events if a "more fulsome account" would not materially change the reputational sting. *See Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 74 (1st Cir. 2015) (addressing defamation claim at summary judgment under Maine law); *Riley v. Harr*, 292 F.3d 282, 294–95 (1st Cir. 2002) (rejecting plaintiff's argument that book was required to "fully and concomitantly" reveal all points of view at the same time; applying First Amendment principles and New Hampshire law). Here, each of Plaintiff's

---

[8] For example, Plaintiff complains repeatedly that the Section 17(a)(2) and Section 17(a)(3) claims in the SEC Final Judgment do not require "scienter." (*E.g.*, ECF No. 15 ¶ 50.) The Gemini summary never makes any reference to Plaintiff's scienter. (*See generally* ECF No. 15-1.) Regardless, Sections 17(a)(2) and 17(a)(3) do pertain to deceptive conduct, including explicitly fraud or deceit, and Plaintiff himself refers to such claims as "antifraud provisions[.]" (ECF No. 15 ¶ 4.) The purported Gemini summary merely uses language that tracks the statutes at issue, and such a summary remains substantially true.

claimed omissions amount to legal minutiae, mostly about what did *not* happen rather than what *did* happen—e.g., that the summary judgment motions did *not* address certain claims, that the SEC Final Judgment did *not* include detailed findings of fact or conclusions of law, that the SEC Final Judgment did *not* include certain types of relief, etc. (ECF No. 15 ¶ 51.) None of Plaintiff's requested inclusions would change the overall impression conveyed by the purported Gemini summary, which is true for the reasons already stated.

*iii. The Gemini summary is protected opinion based on disclosed facts.*

In addition to not identifying an actionable falsity, the purported Gemini summary is not actionable because it discloses the underlying factual premises upon which the conclusions in the summary are based. As a matter of law, the summary is therefore constitutionally protected "pure opinion," and Plaintiff cannot pursue defamation claims simply because he disagrees with the conclusions contained within the alleged Gemini summary when the factual basis of those conclusions (i.e., the filings in the SEC Action) are disclosed in the summary itself.

"Whether a statement is fact or opinion and whether a statement of fact is susceptible to defamatory interpretation is a question of law for the court." *Sanchez-Sifonte*, 2023 WL 5753677, at *11 (citing *Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018)). For a court to make this determination, "the context in which language appears must be evaluated to see whether 'the general tenor of the article negate[s]" the impression that a factual statement is being made. *Phantom Touring*, 953 F.2d at 727. For example, a statement constitutes pure opinion if it is "'based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public[.]'" *Sanchez-Sifonte*, 2023 WL 5753677 at *11 (citation omitted). Such statements are constitutionally "protected from defamation actions by the First Amendment." *Id.*; *see also Phantom Touring*, 953 F.2d at 731 n.13 ("That principle

unquestionably excludes from defamation liability . . . statements clearly recognizable as pure opinion because their factual premises are revealed.”).

Here, Gemini’s purported summary included a “full disclosure” of the underlying facts from which the summary is drawn—i.e., the public court records from the SEC Action. *Id*. at 730. Plaintiff’s FAC now expressly incorporates all those same records. (ECF No. 15 ¶ 18.) Such records merely reflect the activities of the litigants and the decisions of the court in a civil litigation matter, which is the only reason for which they are cited in the purported Gemini summary. (*Compare* ECF No. 15-1 *with* ECF Nos. 8-1, 8-2, 8-3, 8-4.) Without challenging the existence of these underlying records, however, Plaintiff cannot maintain a defamation claim based on the conclusions drawn from those records. *Sanchez-Sifonte*, 2023 WL 5753677 at *12 (holding that when the facts upon which an opinion is based are disclosed, the opinion constitutes nothing but commentary on the facts presented). This includes the conclusion at the opening of the alleged Gemini summary which opines that, based on the various cited documents, “Yes . . . Grybniak was legally held responsible for making material misrepresentations and engaging in deceptive conduct[.]” (ECF No. 15-1 at 1.)

The Court should therefore dismiss the FAC because the summary is simply pure opinion based on disclosed facts.

**D. Plaintiff Also Fails To Adequately Allege Actual Malice.**

Last, and though not necessary to reach this issue in light of the other defects in the FAC, Plaintiff’s sale of securities renders him a public figure subject to the actual malice standard. Because Plaintiff’s various allegations of purported “notice” to Google fail to plausibly show any actual malice, Plaintiff’s claims must be dismissed for this independent reason.

“[T]he First Amendment—applied to the states via the Fourteenth—bars public figures from recovering damages under state defamation laws unless they show that the defamer acted

with 'actual malice[.]'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 52 (1st Cir. 2012). "Actual malice" refers to publishing a statement with actual knowledge that it is false or while harboring serious doubts about its veracity. *Id.* On a motion to dismiss, this requires setting forth well-pleaded facts that plausibly allege actual malice. *See id.* at 55-56. Public figures include, among other things, individuals who have voluntarily placed themselves at the center of public issues. *See Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 588 (1st Cir. 1980).

Here, Plaintiff is a limited public figure in connection with the ICO and the subsequent SEC Litigation based on that ICO. Offering securities for sale to the public voluntarily thrusts the offeror into the public spotlight in a manner sufficient to render the offeror a public figure in connection with said sale. *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977) (noting defendant company was limited purpose public figure with respect to sale of securities because, among other things, the company was "at the time of the libel, offering to sell its stock to the public, thereby voluntarily thrusting itself into the public arena, at least as to all issues affecting that proposed stock sale").[9] The fact that the offeror may not have significant "media access" does not alter the analysis. *Id.* Because Plaintiff was engaged in a securities offering to the public (ECF No. 8-1; *see also* ECF No. 15 ¶ 17), Plaintiff is a limited purpose public figure "with respect to issues involving [his] offering of securities to the public." *Reliance Ins.*, 442 F. Supp. at 1348. In connection with this motion, Google also respectfully requests that the Court take judicial notice of news coverage of Plaintiff and his "open letter to the crypto community" in connection with his ICO and the SEC Action: Yilun Cheng, *Opporty founder calls SEC's ICO lawsuit 'grossly overstated' and 'untruthful' in an open letter*, Yahoo!finance (Jan. 28, 2020),

---

[9] The First Circuit interpreted *Reliance Insurance* in *Bruno & Stillman* and noted that the "stock offering had also made [Reliance] a public figure for the *limited purposes* of the Barron's article" *in addition to* the independent reasons for treating it as a public figure "for *all* purposes" (e.g., its "size, public ownership, and close regulation"). 633 F.2d at 592 n.9 (emphasis added).

https://finance.yahoo.com/news/opporty-founder-calls-sec-ico-211254516.html?guccounter=1 (last visited Sept. 14, 2026).[10] Courts may take judicial notice of articles about a plaintiff for purposes of determining whether the plaintiff is a public figure, though not for purposes of the truth of the matters in the article. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013).

As a result, Plaintiff must adequately plead actual malice. He fails to do so.

As an initial matter, Google cannot have awareness that the purported Gemini summary was false when, for all the reasons stated above, there was no falsity. Instead, the substance of the purported Gemini summary was drawn from (and in fact correctly summarized) public, third-party sources. In light of such citations, Plaintiff cannot say Google had any reason to harbor serious doubts (let alone that it did in fact harbor such doubts) about the substance of the alleged Gemini summary. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 704 (11th Cir. 2016) (holding plaintiff had not alleged actual malice in part because the substance of the article showed the reporters engaged in due diligence).

This is true despite Plaintiff's conclusory allegations of sending emails to Google's legal department. Plaintiff specifically contends sending an email "to Google's legal department" which identified "the specific statements Gemini was generating about him," provided the "procedural history of the SEC Action," provided "contemporaneous captures" (Plaintiff does not elaborate on what those "captures" contained), and complained that the "in-product" methods of addressing the error had not worked. (ECF No. 15 ¶ 62.) This allegation fails for a number of reasons. First, Plaintiff's allegation that he notified Google about "the specific statements Gemini was generating

[10] The Court may take judicial notice without a separate motion. *See* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."); *see also* Fed. R. Evid. 201(c)(2) (providing the court "must take judicial notice if a party requests it and the court is supplied with the necessary information.").

about him" is wholly conclusory and fails to plausibly allege the falsities about which Google was supposedly aware. *See Schatz*, 669 F.3d at 55 (stating that only "non-conclusory, non-speculative" allegations may be considered). Second, even if this allegation were construed to mean that Plaintiff alerted Google to all of the "falsities" alleged in the FAC, this too would be insufficient because, as already discussed, each of Plaintiff's claimed "falsities" are in fact truthful, accurate statements. Last, as Plaintiff admits, "No person at Google ever substantively responded to any notice," and the automated response email clearly disclosed that his "notice" would not be read unless it was "PROVIDING FORMAL LEGAL NOTICE AS REQUIRED UNDER A CONTRACT YOU HAVE WITH GOOGLE." (ECF No. 15 ¶ 64.) Plaintiff does not set forth any facts showing that any of his purported notices ever reached the eyes of a human capable of having the scienter necessary to support an inference of actual malice.

As a result, Plaintiff has not adequately alleged actual malice, requiring the dismissal of his claims for this separate reason.

## E. CONCLUSION

Google respectfully requests that the Court grant its motion to dismiss the FAC in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) with such further relief as is just and proper.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties, including Plaintiff Sergii Grybniak.

In San Juan, Puerto Rico, this 14th day of September 2026.

***/s/ Ismael H. Herrero III***
**Law Offices of Herrero III & Associates, P.S.C.**
Ismael H. Herrero III
USDC-PR #203002
P.O. Box 362159
San Juan, Puerto Rico 00936-2159
T: (787) 754-5000
E: herreroilll@herrerolaw.com

***/s/ Brian M. Underwood, Jr.***
**BRYAN CAVE LEIGHTON PAISNER LLP**
Brian M. Underwood, Jr. *(pro hac vice)*
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, GA 30309
T: (404) 572-6649
F: (404) 420 0649
E: brian.underwood@bclplaw.com

*Attorneys for Defendant Google LLC*